1  Mark Antoine Foster, In Pro Per
   200 Corpus Cristie Road #A
2  Alameda, California 94502
   (415) 756-1611
3  (619) 646-3564



4

5

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

12                                    Case No.  **C-08-01337 MHP**

   **MARK ANTOINE FOSTER,**           **PLAINTIFF'S MEMORANDUM OF**
13                                    **POINTS & AUTHORITIES IN SUPPORT**
                  **Plaintiff,**       **OF OPPOSITION TO DEFENDANTS**
14                                    **MOTION TO DIMISS PLAINTIFF'S**
        **vs.**                        **COMPLAINT;DECLARATION OF**
15                                    **MARK ANTOINE FOSTER IN SUPPORT**
   **MORGAN, LEWIS & BOCKIUS LLP**     **THEREOF AND EXHIBITS 1 THRU 12**
16  **and ERIC MECKLEY, as an individual,**  **ATTACHED THERETO**
   **and DOES 1 through 81,**              **[FRCP 12(B)(6)]**
17
                  **Defendants**       **Date:  April 28, 2008**
                                       **Time: 2:00 pm**
18  _____/

19         **MEMORANDUM OF POINTS AND AUTHORITIES**

20                **I.     INTRODUCTION**

21      On or about February 7, 2008, Plaintiff Mark Antoine Foster filed four almost identical

22  lawsuits against four corporations including claims for fraud and intentional deceit pursuant to

23  California Civil Codes sections 1572, 1709 and 1710; mail fraud, wire fraud and conspiracy to

24

25  PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
   OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

1  mail fraud, intentional infliction of emotional distress and negligent infliction of emotional
2  distress.

3     Plaintiff filed the lawsuits against: 1) his former employer Aramark Sports, LLC and
4  Aramark Corporation, 2) his former employer Aramark's workers compensation attorneys The
5  Law Offices of Gray and Prouty, and C. Kempton Letts and Dana Mitchell as individuals, 3) his
6  former Employer Aramark's employment law attorneys Morgan Lewis & Bokius, and Eric
7  Meckley as an individual, and 4) his former employer Aramark's third party administrator for
8  their worker's compensation claims, Specialty Risk Services, and Gretchen Devine as an
9  individual.

10    Plaintiff now brings his opposition to Defendant's motion to dismiss his complaint, on
11 the grounds that his complaint does state claims upon which relief can be granted as a matter of
12 law.

13    Furthermore, Defendants' motion to dismiss Plaintiff's complaint is without merit, is
14 baseless and includes statements and conclusions that are ignorant of facts, the law and the acts
15 of the Defendants.

16                    **II. Opposing Argument**

17    **1) Justifiable Reliance**

18    Defendants sole defense against the claim of fraud and intentional deceit is based on their
19 allegation that Plaintiff fails to allege that he relied on a misrepresentation. Defendants state and
20 or imply on page 5, lines 13-20 of their motion to dismiss, that because Plaintiff refused to sign
21 and agree that he resigned on May 1, 2007 that he does not claim that he actually relied on
22 Defendants' alleged misrepresentation. Also, because he chose to change the date of the
23 resignation to its correct date and sign the agreement stating he voluntarily resigned on June 15,
24 2006 and not May 1, 2007, and therefore he did not rely on such misrepresentation when he

25 PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

2

1  signed the document. Here Defendants do not deny that Plaintiff was presented with a

2  misrepresentation.

3      Plaintiff alleges that the misrepresentation that he relied on was not refusing to sign the

4  agreement dated May 1, 2007, but the agreement dated June 15, 2006, after he altered it, as he

5  was not aware at that time that he signed it that the defendants were planning to use it to void-out

6  the agreement he signed on March 28, 2006, stating that he would return to work on June 15,

7  2006. Plaintiff did not know this because he did not know at that time that he was wrongfully

8  terminated and had been subject to disability discrimination.

9     Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 1, is a true and

10  correct copy of the Voluntary Resignation agreement that plaintiff signed on March 28, 2006.

11      Plaintiff contends that he did not rely on the misrepresentation- the agreement dated May

12  1, 2007, as he recognized its falsity, but he did rely on the agreement after he altered it to reflect

13  June 15, 2006, the actual date he was forced to resign pursuant to the agreement he signed on

14  March 28, 2006. Aramark's purpose for creating the document and requesting Plaintiff to sign it

15  was so they could cover-up the agreement he signed on March 28, 2006, because Aramark knew,

16  as well as their attorney, Defendant Attorney, Mr. Meckley, the March 28, agreement proves

17  Aramark wrongfully terminated Plaintiff and subjected him to disability discrimination. Plaintiff

18  also alleges that the reason he did not agree to the May 1, 2007 date was because he simply did

19  not want to lie and say he resigned on a date that he did not resign.

20      Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 2, is a true

21  and correct copy of the Voluntary Resignation agreement that plaintiff signed on or around May

22  7, 2007 displaying the June 15, 2006 date.

23      "Whether reliance is justified is a question of fact for the determination of the trier of

24  fact. The issue is whether the person who claims reliance was justified in relying on the

25

1  representation in light of his own knowledge and experience. (Gray v. Don Miller & Asc., Inc.

2  (1984) 35 Cal.3d 498, 503 [198 Cal. Rptr. 551, 674 P.2d 253].Cicone v. URS Corp, 183 Cal.

3  App.3d 194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

4          Aramark knew at that time, on or around May 1, 2007, when they presented the May 1,

5  2007 agreement that Plaintiff had not yet realized that he had been wrongfully terminated and

6  subjected to disability discrimination, Aramark knew this because Plaintiff had not included

7  these claims in his complaint filed on March 9, 2007. Plaintiff alleges that Aramark proactively

8  moved to shield their wrongdoing by obtaining the agreement so they could use it in the event

9  Plaintiff did discover the wrongdoing, and claim wrongful termination and disability

10 discrimination. Plaintiff alleges that the Aramark figured that if they could somehow get him to

11 sign an agreement stating he voluntarily resigned sometime after June 15, 2006, they would be in

12 the clear and Plaintiff would never know of the wrongful termination and disability

13 discrimination,(other than the constructive discharge Plaintiff alleged in his complaint).When

14 Plaintiff refused to sign the document dated May 1, 2007, Plaintiff believes this "threw them

15 off". So, after not being successful in obtaining Plaintiff's signature on the May 1, 2007

16 agreement they decided to use the agreement anyway to still void-out the March 28, 2006

17 agreement.

18         Plaintiff alleges that he may have never realized the wrongful termination and disability

19 discrimination if Aramark and the Defendants had not proactively tried to cover it up.

20         Plaintiff signed the agreement relying on it as being safe as a confirmation as to when and

21 how he actually voluntarily quit pursuant to the March 28, 2006 agreement. Plaintiff did not

22 know how Aramark and the Defendants were going to later use it. Plaintiff alleges that there

23 would be no justifiable reliance only if he had not signed the agreement at all.

24

25

1    Plaintiff also alleges that justifiable reliance is also established because Plaintiff relied on

2  signing the agreement to receive his already agreed upon worker's compensation settlement of

3  $5,500, which Aramark was coercing him to do through their worker's compensation attorneys

4  Gray and Prouty, and also because he relied on the signing of the agreement just to confirm that

5  he did resign pursuant to the agreement he signed on March 28, 2006.

6    "Only '[if] the conduct of the plaintiff [in relying upon a misrepresentation] in the light of

7  his own intelligence and information was manifestly unreasonable' will he be denied recovery.

8  (Hefferan v. Freebairn, [*206] supra 34 Cal.2d at p 719)"( Winn v. McCulloch Corp. (1976) 60

9  Cal.App.3d 663, 671 [131] Cal. Rptr. 597], Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal

10  Rptr. 887; 1986 Cal. App. LEXUS 1804

11    "The misrepresentation must be of a material fact essential to the analysis undertaken by

12  the plaintiff and such that the plaintiff would not have acted as he did without it. Roddenberry v.

13  Roddenberry, 44 Cal.App. 4, 634, 655, 51 Cal. Rptr. 2d 907 (1996)

14    Defendants state further on lines 21 on page 5 thru lines 1-5 on page 6, that even if Foster

15  had actually relied on a misrepresentation, (which Plaintiff now alleges that he did), he fails to

16  allege there was any damage resulting from such reliance, or how he has suffered any injury as a

17  result of Defendants' actions, and that Foster merely offers a conclusory statement that

18  defendants actions were an attempt to cover-up his disability discrimination claim, yet he fails to

19  allege how this is so, or what damages he has suffered as a result.

20    Plaintiff alleges that he did rely on a misrepresentation by Aramark and the Defendants,

21  and he does not fail to allege damage resulting from such reliance, and has suffered injury as a

22  result of Defendants' actions and he does not just merely offer a conclusory statement or fail to

23  allege how this is so or what damages he has suffered as a result.

24

25
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

5

Subsequent to filing this complaint, Plaintiff realized he possessed evidence showing Defendants intent to defraud him; using the agreement as Plaintiff predicted and stated how Defendants were going to use it, as Plaintiff stated how he anticipated they were going to use it in his complaint.

"While the complaint has not been carefully drawn in this regard, it appears there is a reasonable possibility the paucity of facts regarding a justifiable reliance can be cured by amendment and the demurrer should be not sustained without leave to amend on this ground. ( Lingsch v. Savage (1963) 213 Cal App. 2d 729, 739-740 [29 Cal.Rptr. 201, 8 A.L.R. 3d 537] n3 Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

**2) Intent**

On or around January 11, 2008, during Plaintiff's court appointed Early Settlement Conference (ESC) Aramark and their attorney Eric Meckley presented the new agreement Plaintiff signed on or around May 7, 2007 in attempt to cover up their wrongful termination and disability discrimination of Plaintiff. In addition to distributing their ESC statement to Plaintiff, Aramark was required to distribute their ESC statement to the San Francisco Superior Court Commissioner Arlene Borick, as she is the coordinator of the program, and to the panelist attorneys Highman, Highman & Ball and Ronald Sousa & Asc.

" The defendant must intend to induce the plaintiff to alter his or her position to his or her injury or risk. Cal Civ. Code 1710. The intent to defraud or deceive is not required; the plaintiff need only prove the defendants intent to cause another to alter his position. Nathanson v. Murphy, 132 Cal App. 2d 363, 369-70, 282 P. 2d 174 (1955).

In Plaintiff's complaint on page 8, lines 12-22, Plaintiff explained how even though Defendants were not successful in getting him to sign and agree he resigned on May 1, 2007, they planned to use the agreement anyway to void-out the original agreement signed on March

1  28, 2006. Defendants planned on using the agreement to say that plaintiff resigned on June 15,

2  2006; to give the impression that he was not forced to resign pursuant to the March 28, 2006

3  agreement and that he voluntarily resigned on his own. Plaintiff also explained that the mere

4  existence of any voluntary resignation agreement created after his employment had already

5  ended was a fraud, because he had already resigned or was forced to resign pursuant to the

6  March 28, 2006 agreement, and no other agreement was necessary.

7  "Predictions or representations as to what will happen in the future are normally treated

8  as opinion; but often they may be interpreted as implying knowledge of facts , which [*203]

9  makes [***13] the predictions probable. If the defendant does not know of such facts, the

10 statement is an actionable misrepresentation. (See Rest. 2d Torts, 539.) Cicone v. URS Corp, 183

11 Cal. App.3d 194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

12 " Wherever a party states a matter which might otherwise be only an opinion, and does

13 not state it as the mere expression of his own opinion, but affirms it as an existing fact material to

14 the transaction, so that the other party may reasonably treat it as a fact and rely and act upon it as

15 such, then the statement clearly becomes an affirmation of fact within the meaning of the general

16 rule, and may be a fraudulent misrepresentation.'(2 Pomeroy's Equity Jurisprudence, sec 878.)" (

17 Crandall v. Parks (1908) 152 Cal. 772, 776 [ 93 P. 1018]. Cicone v. URS Corp, 183 Cal. App.3d

18 194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

19 "A single false representation as to a material fact made with the intent to defraud and

20 relied upon by another party supports an action for fraud. Sears v. Myerson, 106 Cal. App., 220,

21 222-23, 289 p. 173 (1930).

22 Attached to the Declaration of Mark Antoine Foster as Exhibit 3, are true and correct

23 copies of pages 11, 1, and Exhibit 6 of Aramark's ESC statement evidencing the presentation of

24 the new agreement and the intent to cover-up the March 28, 2006 agreement.

25
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

1   Aramark and the Defendants demonstrated or showed their intent to defraud Plaintiff
2   when they presented the new agreement along with the premise or accusation that Plaintiff
3   voluntarily quit on his own and not pursuant to the March 28, 2006 agreement.

4   " A statement of what the defendant or some third person intends to do relates to an
5   existing state of mind, and is a representation of fact. (4Witkin, Summary of Cal. Law, op. cit
6   supra, 453, p. 2717.) Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal Rptr. 887; 1986 Cal.
7   App. LEXUS 1804

8   " True statements can form the basis of false representation if they are made in a manner
9   designed to create a false impression and were so acted on." Smith v. Brown, 59 Cal. App. 2d
10   836, 838, 140 p. 2d 86 (1943)

11   **3) Knowledge of Falsity**

12   " The misrepresentation that forms the backbone of an intentional deceit claim can be
13   either a positive statement or the failure to disclose a fact that is true. An Affirmative false
14   representation or a known concealment of information material to the circumstance will provide
15   the necessary misrepresentation element." Cal. Civ Code 1572; Gonzales v. Hodgsen, 38 Cal. 2d
16   91, 237 p. 2d 656 (1951)

17   Plaintiff alleges the following:

18   a)   Aramark and Defendant Attorney Meckley presented the fraudulent document to the
19   Court when he distributed it the San Francisco Superior Court and to Plaintiff and the
20   panelists participating in the Early Settlement Conference.

21   b)   Aramark and Attorney Meckley knew exactly when Plaintiff's employment ended
22   c)   Aramark and Defendant Attorney Meckley knew from evidence derived from their
23   own discovery of Plaintiff in the employment Discrimination case against them that

24

25
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

8

Plaintiff resigned pursuant to Voluntary Agreement he signed on March 28, 2006, as
Aramark and Defendant Attorney Meckley possesses a copy or that agreement.

d) Aramark and Defendant Attorney Meckley knew the voluntary resignation agreement
(VRA) Plaintiff signed on May 7, 2007 was a fraudulent document because they
knew its purpose was to void-out Plaintiff's VRA signed on March 28, 2006.

e) Aramark and Defendant Attorney Meckley knew Plaintiff was terminated or resigned
pursuant to the VRA Plaintiff signed on March 28, 2006 when he did not return to
work or June 15, 2006.

f) Aramark and Defendant Attorney Meckley knew that they wrongfully terminated
Plaintiff pursuant to the contract signed on March 28, 2006 because Aramark knew
through their own discovery they did not offer Plaintiff a reasonable accommodation
to his disability before terminating him, as Defendants admitted the only action
initiated by Aramark to secure Plaintiff's position was Executive Sous Chef Tim
Miller calling Plaintiff to inquire whether or not he was returning to work, which was
not offering him a reasonable accommodation. It was not Mr. Miller job to offer
Plaintiff a reasonable accommodation unless, James Chan the personell manager,
whose job was to reach out to Plaintiff and offer him a reasonable accommodation,
had instructed him to do so. Mr. Chan knew Plaintiff was disabled and failed to
engage in the interactive process with Plaintiff to help secure his job. Plaintiff alleges
if they had not been so eager to terminate him and wanted him to return healthy and
fit to return to work, they would have reached out and made more of an effort to help
secure his position. They also would have made sure they engaged in the interactive
process with Plaintiff so they could be sure he was offered that reasonable
accommodation. The law requires employers to offer that reasonable

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

9

1    accommodation to an disabled employee whether or not he asks for it or not because

2    a disabled employee may not know he can ask for a further reasonable

3    accommodation because he is disabled, especially mentally disabled as Plaintiff was.

4    Plaintiff was actually terrified to return to work at that time due to being

5    constructively discharged. If Aramark had reached out to Plaintiff and made him feel

6    that it was ok to return to work, and that they had corrected the harassment problems

7    and initiated an effective investigation regarding his complaints, maybe Plaintiff

8    would have felt more secure about returning to work on June 15, 2006 like he had

9    hoped he could, but that was not the situation. Plaintiff felt at that time if he returned

10   he would be subject to further retaliation, and as mentioned, Plaintiff was still

11   disabled.

12   g)   Aramark and Defendant Attorney Meckley knew that the voluntary Resignation

13        agreement Plaintiff signed on or around May 7, 2007 was being used to cover-up

14        Aramark's wrongful termination of plaintiff.

15   h)   Aramark and Defendant Attorney Meckley knew presenting the VRA signed on May

16        7, 2007 in the Early Settlement Conference on January 11, 2008, as if Plaintiff had

17        resigned pursuant to it instead of the VRA he signed on March 28, 2006 was fraud

18        and intentional deceit.

19   i)   Aramark and Defendant Attorney Meckley knew when Plaintiff signed the VRA on

20        or around May 7, 2007, stating he resigned on June 15, 2006, it was just to confirm he

21        voluntarily resigned pursuant to the VRA he signed on March 28, 2006, and that's

22        why Plaintiff altered the date on the new VRA to June 15, 2006 from May 1, 2007, as

23        his client Aramark first presented a date of plaintiff's Resignation as of May 1 2007,

24

25   PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF          10
     OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT      C-08-01337 MHP

and as they expected him to agree that he resigned on that date, which was over a year after Plaintiff's employment ended with his client Aramark.

j)   Aramark and Defendant Attorney Meckley knew when Plaintiff signed the new VRA it was not to void out or disregard the VRA signed on March 28, 2006 as if it did not exist or Plaintiff was not terminated pursuant to it, but to the contrary.

k)   Aramark and Defendant Attorney Meckley consciously ignored and disregarded and suppressed the fact that plaintiff was terminated pursuant the VRA he signed on March 28, 2006, and knew Plaintiff was terminated pursuant the VRA he signed on March 28, 2006. Aramark and Defendant Attorney Meckley attempted to defraud Plaintiff into believing that they did not wrongfully terminate him and that because he signed the new VRA he was not entitled to claim wrongful termination, as if he resigned on his own.

l)   Aramark knew that they had forced or coerced Plaintiff to sign the agreement by instructing their workers compensation attorneys Gray and Prouty not to release Plaintiff's already agreed upon worker's compensation check of $5,500 until he signed the agreement.

m)   Aramark and Attorney Meckley knew that Attorney Meckley actions constitute a Breach of Fiduciary Duty as an attorney due to Attorney Meckley knowing the new agreement was a fraudulent document and being used for fraudulent purposes, and the fact that he was helping his client Aramark preserve and present the document.

n)   Aramark and Attorney Meckley knew the truth of the matter, which proves they knew the falsity of the document.

o)   Aramark and Attorney Meckley knew the truth as to when, how and why Plaintiff was terminated, as they knew Plaintiff was first terminated to the agreement he

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

11

1         signed on March 28, 2006 before signing the new agreement on or around May 7,

2     2007.

3         " In California it is well established that an attorney may not, with impunity, either

4 conspire with a client to defraud or injure a third person or engage in intentional tortuous conduct

5 toward a third person." (Ibid.) Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal Rptr. 887;

6 1986 Cal. App. LEXUS 1804

7         " Where a defendant makes false statements, honestly believing them to be true, but

8 without reasonable grounds for such belief, he may be held liable for negligent

9 misrepresentation, a form of deceit." ( Roberts v. Ball, Hunt, Hart, Brown & Baerwitz, supra, 57

10 Cal. App.3d 104, 111; Muraoka v. Budget Rent-A-Car, Inc. (1984) 160 Cal. App. 3d 107, 119

11 [206 Cal Rptr. 476].) Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal Rptr. 887; 1986 Cal.

12 App. LEXUS 1804

13         " Fraud is a generic term [***4] which embraces all the multifarious means which human

14 ingenuity can devise and are resorted to by one individual to get an advantage over another. (1)

15 No definite and invariable rule can be laid down as a general proposition defining fraud, as it

16 includes all surprise, trick, cunning, dissembling, and unfair ways by which another is deceived.

17 ( Armstrong v. Wasson, 93 Okla. 262 [220 P. 643]. Cicone v. URS Corp, 183 Cal. App.3d

18 194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

19         "As has been said, fraud may be committed by the suppression of the truth as well as by

20 the suggestion of falsehood. It may consist in suppression of that which it is one's duty to declare

21 as well as in the declaration of that which is false" Wells v. Zenz, 83 Cal. App 137, 256 P. 484;

22 1927 Cal App. LEXUS 622

23         Plaintiff alleges that if the court were to pose one question to Defendants and Attorney

24

25   PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF       **12**
    OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT     C-08-01337 MHP

1    Meckley; If your client did not wrongfully terminate Plaintiff why did you and your client

2    attempt to cover up or void out the March 28, 2006 agreement?

3         " Deceit may be negative as well as affirmative arising out of the suppression of

4    information that should have been revealed, as well as by the expression of information that

5    is false." Agnew v. Cronin, 148 Cal. App 2d 117, 129-130, 306 P. 2d 527, 534 (1957)

6         " The defendant must have made an untrue representation as to a part or existing material

7    fact. Bily v. Arthur Young & Co., 3 Cal. 4th 370, 408 11 Cal Rptr. 2d  51 (1992)

8    Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 4, is a true and

9    correct copy of page 6 of Aramark' Sports LLC's answers to plaintiff employment

10   interrogatories evidencing Plaintiff was terminated on June 15, 2006 pursuant to the contract

11   signed on March 28, 2006.

12   Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 5, is a true and

13   correct copy of a email from James Chan to Victoria Litner the regional HR manager stating he

14   planned to request a doctor's note from Plaintiff when he returned to work, evidencing he knew

15   Plaintiff was still disabled.

16   Attached to the Declaration or Mark Antoine Foster attached hereto as Exhibit 6 is true and

17   correct copies of Plaintiff state disability check stubs submitted to Aramark and Defendant

18   Attorney Meckley in response to Defendant Meckley's Discovery showing plaintiff was disabled

19   on or around June 15, 2006

20   Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 7 is a true and

21   correct copy of the compromise and release agreement presented to plaintiff by the Law Offices

22   of Gray and Prouty evidencing plaintiff was coerced to sign the documents as a condition of

23   receiving his worker's compensation settlement of $5,500.

24   **4) Damages Suffered**

25

1  Defendants claim that Plaintiff fails to allege there was any damage resulting from the

2  reliance he alleges and how he has suffered any injury as a result of Defendants' actions.

3  Plaintiff alleges that he does show justifiable reliance and how he has suffered an injury as a

4  result of defendants' actions by confirming Defendants' intent to defraud, as they confirm the

5  intent in the ESC.

6  Plaintiff thereafter suffered and continues to suffer emotional distress and mental anguish

7  knowing Defendants attempted to and is still attempting to defraud him. Plaintiff also began to

8  suffer emotional distress and mental anguish on or around May 1, 2007, when Aramark

9  purposely withheld his worker's compensation payment of $5,500 to coerce him to sign the new

10  agreement. Aramark knew there was a good chance Plaintiff was suffering financially because

11  they knew he was receiving unemployment insurance because he was unemployed, and they

12  were paying into his claim, and knew he would be more susceptible to signing the agreement

13  because he was financially vulnerable.

14  Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 8 is a true and

15  correct copy of Plaintiff's UI claim filed with the Defendants.

16  Plaintiff also alleges that he began to suffer mental anguish and emotional distress when he

17  discovered that Defendant's attorneys Gray and Prouty and their third party administrators

18  Specialty Risk Services lied to the Worker's Compensation Appeals Board, stating that Plaintiff

19  filed an EEOC claim subsequent to agreeing to the worker's compensation settlement of $5,500,

20  as this was the reason why they had not settled the claim timely after they agreed to do. Plaintiff

21  alleges that the Aramark, Gray and Prouty and Specialty Risk Services committed perjury to a

22  state agency and to Plaintiff when they committed this act because they knew Plaintiff had not

23  filed an EEOC claim. Plaintiff alleges he can report this to the Worker's Compensation Appeals

24  Board if the Aramark does not do it themselves.

25
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

1    Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 9 is a true and

2  correct copy of Gray and Prouty's Opposition to Plaintiff Readiness to Proceed, evidencing the

3  perjury.

4    Plaintiff alleges he also continues to suffer mental anguish and emotional distress due to

5  Defendants still at present continuing to deny the allegations of the wrongful termination and

6  disability discrimination, and insisting that Plaintiff resigned on his own, and that it was not an

7  involuntary resignation. Plaintiff is shocked and dismayed that the Defendants continue to insist

8  that the March 28 agreement is justified, as if their client had a right to terminate Plaintiff

9  pursuant to it when they know that agreement was union connected, as it was part of the union

10  collective bargaining agreement with Aramark. Plaintiff was a union member, and Defendants

11  knew their client wrongfully terminating Plaintiff without informing the union prior to his

12  dismissal and for not offering Plaintiff a reasonable accommodation to his disability prior to his

13  dismissal.

14    Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 10 is a true

15  and correct copy of page 5 of the employment interrogatories where evidencing Plaintiff's job

16  was union connected.

17    Defendants knew that the voluntary agreement /collective bargaining agreement did not

18  preempt state and federal laws regarding disabilities. Plaintiff alleges Aramark never in writing

19  or verbally offered Plaintiff a further reasonable accommodation before his termination, as they

20  failed to engage in the interactive process with Plaintiff.

21    Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 11 is a true

22  and correct copy of page 5 of the union's rules of the collective bargaining agreement,

23  evidencing Defendants are required to report any terminations.

24

25  PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF    **15**
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

1   Plaintiff alleges Defendants knew he was disabled on or around June 15, 2006 when he was

2   terminated for not returning to work on June 15, 2006.

3   Plaintiff alleges Defendants continuing to insist their client did not wrongfully terminate

4   Plaintiff up to the present time is an insult to his intelligence, and he continues to suffer

5   emotionally and mentally because of their denial.

6   **5) Plaintiff has moved to dismiss his Second Claim of Mail fraud, Third Claim for**

7   **Conspiracy to Commit Mail Fraud, and Fourth Claim for Wire Fraud**

8   In response to Defendants motion to dismiss Plaintiff's claims of mail fraud, wire fraud and

9   conspiracy, due to Plaintiff not having a private right of action for these alleged crimes, Plaintiff

10   has moved to dismiss these claims.

11   Plaintiff does not contend he has a private right of action for these crimes, therefore for the

12   reasons above and in addition to the attorney general being the only one who can bring these

13   charges through an indictment or otherwise Plaintiff has filed a motion to dismiss these claims.

14   Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 12 is a true

15   and correct copy of Plaintiff's Motion To Dismiss these claims.

16   **6) Plaintiff's Fifth Claim for Breach of Fiduciary Duty does state a claim upon which**

17   **relief can be granted because Defendants owed him a Fiduciary Duty**

18   **a)   Attorney Meckley's Breach of Fiduciary Duty and knowledge of Fraud and Falsity**

19   " In California it is well established that an Attorney may not, with impunity, either

20   conspire with a client to defraud or injure a third person or engage in intentional tortuous conduct

21   toward a third person" (Ibid) Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal Rptr. 887; 1986

22   Cal. App. LEXUS 180

23   " The extent of liability an attorney may incur toward third persons, while the attorney is

24   acting of behalf on a client, has been the subject of divergent opinion in various American

25

Jurisdictions, [ ***10] the traditional view being that an attorney may not generally be held liable to third persons because he is not in privity with them, and owes them no duty to act with care. ( See Attorneys Liability to Third Parties, 45 A.L.R. 3d 1177, 1181.) A typical statement of this approach is that 'an attorney is not liable to third persons for acts committed in good faith in performance of professional activities as an attorney for his client. If, however, an attorney is actuated by malicious motives, or shares the illegal motives of his client, he may be personally liable with the client for damage suffered by a third person as the result of the attorney's actions' (Fns. Omitted) (7 Am. Jur.2d, Attorney's, § 196, p. 161 (1963).) ( Roberts v. Ball, Hunt, Hart, Brown & Baerwitz, supra 57 Cal App. 3d 104, 109.) Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

" Thus, the case law is clear that a duty is owed by an attorney not to defraud another, even if that other [***11] is an attorney negotiating at arm's length". Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

"An Attorneys presentation to court of statement of fact which is known to be false and which tends to mislead court violates this section, whether or not attorney is successful in misleading court, and intent to secure determination based on false statement is presumed. Vickers V. State Bar of Cal. (1948) 196 P.2d 10, 32 Cal 2d 247; Pickering V. State Bar of California (1944) 148 P.2d 1.24 Cal 2d 141.

Although Attorneys may not present evidence they know to be False or assist in perpetrating known frauds on the court, they may ethically present evidence that they suspect, but do not personally know is false. People v Riel (2000) 96 Cal Rptr. 2d 1, 22 Cal $th 1153, 998 F.2d 969, Rehearing Denied, Certiorari Denied 121 S. CT. 803, 531 U.S. 1087. 148 L. ED 690 Disciplinary Rule 7-102 of the ABA states (A) (2) In his representation of a client, a lawyer shall not knowingly advance a claim or defense that is unwarranted under existing law, except that

1   he may advance such claim or defense if it can be supported by good faith argument for an

2   extension, medication, or reversal of existing law. He also my not:

3   (3) Conceal or knowingly fail to disclose that which he is required by law to reveal,

4   (4) Knowingly use perjured testimony of false evidence

5   (5) Knowingly make a false statement of law or fact

6   (6) Participate in the creation or preservation of evidence when he knows or it is obvious that the

7   evidence is false

8   (7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

9   (8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

10      In determining discipline, the Supreme Court may take into account whether the attorney's

11  misconduct was negligent, as opposed to being intentionally fraudulent, the former warranting

12  less severe discipline than the latter. Waysman V. State Bar (1986) 41 Cal 3d 452, 458 224 Cal

13  Rptr. 101,714, P.2d 1239.

14      Plaintiff alleges that defendant Meckley acts were intentional Fraud & Deceit, as he knew he

15  was participating in a fraudulent Scheme, and as he had knowledge of the falsity and the fraud.

16      It was a grave breach of Professional Ethics on part of claimant's Attorney's to present

17  expert testimony knowing or suspecting it to be false and misleading in the absence of full

18  disclosure of the manner in which test of allegedly defectively designed winch was conducted

19  Xanudu Maritime Trust V. Meyer N.D. CAL 1998, 21 F. Supp 2d. 1104.

20      An attorney including a criminal defense attorney, has a special duty to prevent and disclose

21  frauds upon the court. People V. Riel (2000) 96 CAL Rptr. 1, 22 Cal 4th 1153, 998 P. 2d 969

22  rehearing denied. Certiorari denied, 121 S.Ch 803, 531 U.S. 1087, 148L. Ed 2d 690

23      Committing any act involving dishonesty, moral turpitude or corruption, whether the act is

24  committed in the course of the attorney relations as an Attorney or otherwise, and regardless

25

1    of whether or not the act is a felony or misdemeanor.  [Bus & Prof Code 6106]. If the act

2    constitutes a felony or misdemeanor .Conviction in a criminal proceeding is not a condition

3    precedent to disbarment or suspension of practices because of the act [Bus & Prof. Code 6106].

4    Participating in scheme to defraud creditors properly subjects Attorney to disciplinary action.

5    Alled V. State Bar (1977) 141 CAL Rptr. 808, 20 Cal 3d 172, 570 P.2d 1226

6       Defendant Attorney Meckley Acts constituted a violation of his oath and duties as an

7    Attorney under Bus & Prof. Code 6068 subd(a), 6103.

8       An Attorney owed a fiduciary duty as pledge to preserve the pledged property. An

9    Attorney may be disciplined for breach of fiduciary duty owed to a non-client. Hartford V. State

10    Bar.

11       Defendant Attorney Meckley owed a fiduciary duty to plaintiff as a non-client.

12    Professionals are held to a higher standard of care than an ordinary reasonable person would be.

13    Attorneys, for example must behave as a reasonable Attorney would do so rather than an

14    ordinary person and that difference matters in court.

15       The attorney bears the burden of showing that the findings of the state bar are not

16    supported by the evidence, and in meeting that burden, must demonstrate that the charges of

17    unprofessional conduct are not sustained by convincing proof and to a reasonable certainty (per

18    Lucas, C.J., Arquelles and Eagleson JJ. ) Kapelus V. State Bar .44 cal. 3d 129, 242 Cal Rptr, 196

19    745 P.2d P.2d 917 (Dec 1987)

20       Plaintiff alleges that he has presented convincing evidence to a reasonable certainty

21    proving Defendant Attorney Meckley's unprofessional conduct and breach of fiduciary duty.

22       Defendant Attorney Meckley knew he was construing to help carryout a scheme help

23    shield his client from Plaintiff's claim of wrongful termination and disability discrimination.

24       Defining breach of fiduciary duty –

25   
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

19

1    To determine breach of duty's existence, a determination is made as to the standard of

2  care and an evaluation of the defendants conduct in reflection of that determined standard. If

3  duty of care by the defendant can be proven, using the reasonable care standard, then negligence

4  can be an issue. The defendant needs to have recognized the risks created by her on his acting

5  and to understand what could happen from those risks taken. The general standard of care is then

6  applied to the specific circumstances of the situation and the jury must establish whether the

7  defendant conduct was negligent. When the courts decides if duty was owned they consider the

8  objective or subjective standard. Objective standard considers the defendants actions against a

9  hypothetical reasonable person. With the subjective standard, the court considers whether the tort

10  feasor, the person who is allegedly negligent, believes her or his actions were reasonable. For

11  example, if someone attempts to rob an elderly woman in a parking lot and she happens to have a

12  gun and shoots her attacker, the objective standard would ask if a reasonable person would have

13  acted the same way. In the subjective standard the courts would ask the elderly woman if she

14  though she was acting in a reasonable fashion.

15    If a plaintiff, is unable to prove the defendant's negligence because pertinent information

16  is inaccessible, them the plaintiff can rely on res ipsa loquitur, as this means is that the act speaks

17  for itself and needs no other information to determine negligence. But, in order to use this, the

18  Plaintiff must prove two things: The event which injured themselves only happens when

19  negligence has occurred; the item or instrument which caused the injury was under exclusive

20  control of the defendant and the plaintiff injuries were not due to their own act.

21    The Key Factor to remember in considering negligence is whether the duty of care was

22  even owed to the Plaintiff, by the defendant and whether or not that duty was breached.

23    Defendant Attorney Meckley owed plaintiff a duty of care as an Attorney to uphold law

24  and not engage in a fraudulent activity he knew would deprive plaintiff of his rights. Plaintiff

25  PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
   OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

**20**

has presented credible evident supporting his claims against defendant Attorney Meckley but can also rely on res ipsa loquitur, as the acts of Defendant Attorney Meckley speaks for itself and Plaintiff needs no other information to determine negligence.

Plaintiff alleges that defendant Attorney Meckley probably would not have presented the document in the Early Settlement Conference Statement, (which he also had to distribute a copy to the coordinator of the Early Settlement Program, Commissioner Arlene Borick), if he had been served with the fraud lawsuit prior to January 11, 2008, the date of the Early Settlement Conference. He probably would not have presented it, because he would have know that his actions would have solidified plaintiff's claims of fraud, as he "overreached" in his efforts to help defraud Plaintiff of his wrongful termination claim.

Plaintiff alleges that Defendant Attorney Meckley thinks its good lawyering to play "gotcha" games and twist the meaning or words. Defendant Meckley intent was to present the new VRA and say " see we gotcha, you signed off that you voluntarily resigned on your own, and my client didn't wrongfully terminate you", knowing this was not true, as this is why the efforts to obtain the document were initiated and the mere fact that the new VRA exists or was created after plaintiff employment had already ended is a fraud.

Defendant Attorney Meckley knew the VR Agreement was a fraudulent document obtained by fraudulent means and was being used for fraudulent purposes. Plaintiff believes Defendant Attorney Meckley should be suspended and /or disbarred because be violated his oath as an Attorney and that he committed acts involving moral in turpitude and dishonesty.

Under Bus & Prof Code 6068. Declaring that it is the duty of an Attorney "never to seek to mislead the judge by an artifice or false statement or fact of law", the presentation to a court of a statement of fact know to be false presumes an intent to secure a determination based thereon and is a clear violation of the quoted provision. Pickering V. State Bar

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

1     Plaintiff alleges he has shown defendant Attorney Meckley's motive, intent, and

2    knowledge of falsity.

3     **7) Circumstantial Evidence**

4     It is no coincidence that there would be a casual link in time as to when the new VRA

5    was obtained, which was after Plaintiff and Aramark had already agreed on a settlement

6    regarding the workers claim of $5,500, as the agreement was handled by Aramark's Worker

7    Compensation Lawyers Gray & Prouty, and after Morgan Lewis & Bokius and Defendant

8    Attorney Eric Meckley were retained as council against plaintiff in the representation of the

9    employment discrimination claim.

10    In April 1, 2007 before Plaintiff was offered the new VRA, which was on or around May

11   1, 2007, Morgan Lewis & Bokius's Attorney Sue Boag contacted Plaintiff to offer him a global

12   settlement offer to settle the employment discrimination claim and workers compensation claim,

13   Plaintiff declined. Soon thereafter on or around May 1, 2008 Plaintiff was presented with the

14   new VRA and was coerced to sign it. Aramark requested that he sign and agree that he

15   voluntarily resigned on May 1, 2007, and that as a condition, insisted that he sign it to receive his

16   already agreed upon worker compensation settlement on $5,500 dollars. Plaintiff altered the date

17   to reflect or confirm that he resigned on June 15, 2006, over a year prior to May 1, 2007, as this

18   date confirmed that Plaintiff actually resigned or June 15, 2006 pursuant to the March 28, 2006

19   VRA, in which he agreed to return (if he was able) on June 15, 2006. Plaintiff was still disabled

20   or June 15, 2006 and was not able to return. Plaintiff was also afraid of continued retaliation,

21   from Aramark if he did return. (see employment discrimination claim presently pending in this

22   court and subject to remand).

23    Although the new VRA was presented by Gray & Prouty, Plaintiff believes Defendant

24   Attorney Meckley knew all along about the new VRA and knew how it was being obtained,

25

1 and knew what it was going to be used for, and knew he was the one who was going to use it.

2 Defendant Attorney Meckley wanted to trick Plaintiff into believing that the new VRA was

3 valid.

4 Actual harm is not necessary to merit disciplinary action for misleading Court and

5 violating oath of Attorney if actual deception is intended and shown. Reznick V. State Bar

6 (1969) 1 Cal. 3d 198, 204, 81 Cal Rptr 769, 460 P.2d 96

7 Breach of fiduciary duty owed to non-client is basis for Attorney Discipline, Hartford V.

8 State Bar, (1990) 50 Cal 3d 1139, 1153 270 Cal Rptr. 12, 791 P.2d 598

9 Even outside Attorney – Client context, Attorney's breach or fiduciary duty owed to

10 another warrants discipline, Morales V. State Bar (1988) 44 cal.3d 1037, 1044 –1045, 245 Cal

11 Rptr. 3a8, 751 P.2d 457.

12 **8) Plaintiff's Sixth Claim for Intentional Infliction of Emotional Distress does state a**

13 **claim upon which relief can be granted because Plaintiff does allege conduct that was**

14 **extreme and outrageous**

15 Plaintiff cites Defendants' same law " In order to recover damages, the Defendants conduct

16 must be characterized as involving an "extreme and outrageous" invasion of another's mental

17 and emotional tranquility or as going beyond" a'' reasonable bounds of decency" Alcorn v.

18 Anbro Engineering, Inc. 2 Cal 3d 493, 498; Aqostini v. Strycula, 231 Cal App, 2d 804, 818

19 (1965); Perati v. Atkinson 213 Cal App 2d 472, 474 (1963O).

20 Plaintiff states on page 21 in paragraph 66 of his complaint how defendants acts were

21 outrageous intentional and malicious and done with reckless disregard, and how Defendants

22 knew defrauding plaintiff in the manner they did would certainly cause him to suffer severe

23 emotional distress and mental anguish.

24

25
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP

1    Plaintiff also states just how outrageous Defendants actions were; Defendants knowing

2   Plaintiff had already suffered emotional and psychological injury due to the previous acts of the

3   of their client Aramark while Plaintiff worked at the Carnelian Room, as evidence presented by

4   Plaintiff to Defendants by way of discovery proves Plaintiff's injuries, and that Defendants were

5   aware of those injuries.

6    Plaintiff also alleges that Aramark knew withholding his worker's compensation check to

7   coerce him to sign the new agreement knowing he was financially vulnerable was despicable and

8   outrageous, which Plaintiff alleges and believes Defendants were aware of.

9   **9) Plaintiff's Seventh claim for Negligent Infliction of Emotional Distress does state a**

10  **claim upon which relief can be granted because Defendants Morgan Lewis & Bokius LLP**

11  **does owe a duty to Plaintiff**

12   Morgan Lewis & Bokius does owe a duty of care to Plaintiff as a corporation to not allow

13  their attorneys to engage in fraudulent activities with their clients and subject a Plaintiff to their

14  Intentional Infliction of Emotional Distress and Fraud and Intentional Deceit, among other things

15  mentioned herein.

16   Plaintiff alleges that it was despicable conduct to allow their attorneys  to cause Plaintiff

17  emotional distress and mental anguish after already knowing their client Aramark had already

18  injured Plaintiff while he was employed with them, which caused his mental disability.

19   Plaintiff alleges that Morgan Lewis and Bokius is negligent and vicariously liable for the acts

20  of their attorneys, and knew or should have known the acts were being committed.

21   "In Pleasant v. Celli (1993) the court said that to determine liability for negligent infliction of

22  emotional distress in any given case, several factors should be considered. The pertinent factors

23  include foreseeabilty of the harm to plaintiff, the degree of certainty that plaintiff suffered injury,

24  the closeness of the connection between the defendant's conduct and the injury suffered, the

25

1 | moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent

2 | of the burden to the defendant and consequences to the community of imposing a duty to

3 | exercise care with resulting liability for the breach, and the availability, cost and prevalence of

4 | insurance for the risk involved. Foreseeabilty is the touchstone of the emotional distress analysis.

5 | Since the chief element in determining whether defendant owes a duty or an obligation to

6 | plaintiff is the foreseeabilty of the risk, that factor will be of prime concern in every case.

7 | Because it is inherently intertwined with foreseeability, such duty or obligation must necessarily

8 | be adjudicated only upon a case- by -case basis. Imposition of liability may be warranted when

9 | there is a high degree of foreseeabilty of shock to the plaintiff and the shock flows from an

10 | abnormal event."

11 | Plaintiff alleges Defendants Morgan Lewis and Bokius knew or should have foreseen the

12 | injury to Plaintiff, and owed a duty to Plaintiff to not to allow more harm to be caused, and

13 | should have a policy of preventing future harm to Plaintiff as a responsible corporation. Morgan

14 | Lewis and Bokius have a duty to exercise care and consequences to the community if it does not

15 | exercise care. There is moral blame attached to Morgan Lewis and Bokius's conduct, as it is

16 | immoral to employ and allow their attorneys to commit the acts Plaintiff alleges herein.

17 |

### III.    CONCLUSION

18 | Based on the foregoing, Plaintiff respectfully requests that Defendant's motion to dismiss

19 | Plaintiff's First claim for Fraud and Intentional Deceit, his Fifth claim for Breach of Fiduciary

20 | Duty his Sixth claim for Intentional Infliction of Emotional Distress, his Seventh claim for

21 | Negligent Infliction of Emotional Distress, be overruled, with leave to amend.

22 | Date: April 2, 2008          Mark Antoine Foster, In Pro Per

23 |

24 |

25 | PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01337 MHP