1  **Mark Antoine Foster, In Pro Per**
   **200 Corpus Cristie Road #A**
2  **Alameda, California 94502**
   **(415) 756-1611**
3  **(619) 646-3564**

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11                                  Case No.  **C-08- 01337 MHP**

12 **MARK ANTOINE FOSTER,**          **PLAINTIFF'S REPLY IN SUPPORT OF**
                                   **MOTION TO DISQUALIFY**
13                                  **ATTORNEYS ERIC MECKLEY,**
               **Plaintiff,**        **MELINDA REICHERT, SUE BOAG, AND**
14                                  **MORGAN LEWIS & BOKIUS OPPOSING**
       **vs.**                      **DEFENDANT'S OPPOSITION;MEMO**
15                                  **OF PTS & AUT;DECLARATION OF**
   **MORGAN LEWIS AND BOKIUS and**   **MARK ANTOINE FOSTER IN SUPPORT**
16 **ERIC MECKLEY, as an individual,** **THEREOF AND EXHIBIT "A"  THRU**
   **and DOES 1 Through 81**         **"B"ATTACHED THERETO**

17             **Defendants**        **Date:    April 28, 2008**
                                   **Time:   2:00 p.m.**
18                                  **Location: Courtroom 15, 18th floor**

19                    **I. Introduction**

20     Plaintiff MARK ANTOINE FOSTER hereby submits his reply to Defendant's

21 Opposition to his motion to disqualify attorneys Eric Meckley, Melinda Reichert, Sue Boag and

22 Morgan Lewis and Bokius LLP as opposing council against him in the above titled action.

23           **MEMORANDUM OF POINTS AND AUTHORITIES**

24

25

1

2

3                                  TABLE OF CONTENTS

4

5        I.        INTRODUCTION................................................................ 1

6        II.       REBUTTAL ARGUMENT.......................................................2

7        Plaintiff's Response To Defendant's Argument .......................................2

8        A.        MLB Is Not Entitled To Represent Itself In The Present Case Due
                   To A Conflict Of Interest Created By Attorney Meckley's Breach
9                  Of Fiduciary Duty And Fraud And Intentional
                   Deceit..............................................................................2
10
         B.        It Is Not Undisputed That Neither MLB Nor Meckley Has Perpetrated
11                 A Fraud Against Plaintiff...........................................................6

12       C.        Plaintiff May Lack Standing To Move To Disqualify MLB And Its
                   Attorneys Based On Any Alleged Conflict Of Interest, But Only In
13                 The Traditional Sense, Not In The Present Case, Due To Attorney
                   Meckley's Breach Of Fiduciary Duty And Fraud And Intentional
14                 Deceit...............................................................................15

15
         D.        Plaintiff' Does Not Lack Standing To Move To Disqualify MLB
16                 And Its Attorneys Based On The Possibility That Meckley May Be
                   Called As A Witness In Any Of Plaintiff's Lawsuits, Because It
17                 Is Possible He May Be Called As A Witness In His Lawsuits................16

18       E.        Disqualification Would Not Be Inappropriate In The Present Case...........17

19       III. CONCLUSION..................................................................18

20

21

22

23

24
         PLAINTIFF'S NOTICE REQUESTING PERMISSION TO ALLOW SUBMISSION OF HIS
         MOTION TO DISQUALIFY ATTORNEYS
25                                                                       C- 08-1337 MHP
                                             i

1

**II. Rebuttal Argument**

2

**Plaintiff's Response To  Defendants' Argument**

3

**A.    MLB Is Not Entitled To Represent Itself In The Present Case Due to A**

4

**Conflict Of Interest Created By Attorney Meckley's Breach Of Fiduciary Duty And Fraud**

5

**And Intentional Deceit**

6

Plaintiff alleges that if a law firm's attorney engaged in a fraudulent act with his client to

7

defraud a third party, that attorney has breached his fiduciary duty with that third party, and that

8

attorney, as well as any other attorney employed by that firm should not be able to continue to

9

represent that client, nor themselves against THAT THIRD PARTY in any continuing lawsuits.

10

Plaintiff is informed, believes and therefore alleges that where material facts are known

11

to one party and not to the other, failure to disclose them is not actionable fraud unless there is

12

some relationship between the parties which gives rise to a duty to disclose such known facts,

13

and a duty to disclose facts where the party having knowledge of the facts in a fiduciary or a

14

confidential relationship. A fiduciary or a confidential relationship exists whenever under the

15

circumstances trust and confidence reasonably may be and is reposed by one person in the

16

integrity and fidelity of another.

17

Plaintiff alleges that because Attorney Meckley suppressed the fact that the presented

18

agreement' purpose was to wrongfully shield his client from a claim of wrongful termination and

19

disability discrimination, he failed to disclose a fact he was obligated to disclose, to the court and

20

to Plaintiff, and as an attorney, knowing it was going to unrightfully deprive Plaintiff of his

21

property or any remedy in the form of monetary gain entitled to Plaintiff regarding his claims.

22

"The extent of liability an attorney may incur toward third persons, while the attorney is

23

acting of behalf on a client, has been the subject of divergent opinion in various American

24

25

1    Jurisdictions, [***10] the traditional view being that an attorney may not generally be held liable

2    to third persons because he is not in privity with them, and owes them no duty to act with care.

3    (See Attorneys Liability to Third Parties, 45 A.L.R. 3d 1177, 1181.) A typical statement of this

4    approach is that 'an attorney is not liable to third persons for acts committed in good faith in

5    performance of professional activities as an attorney for his client. If, however, an attorney is

6    actuated by malicious motives, or shares the illegal motives of his client, he may be personally

7    liable with the client for damage suffered by a third person as the result of the attorney's actions'

8    (Fns. Omitted) (7 Am. Jur.2d, Attorney's, § 196, p. 161 (1963).) (Roberts v. Ball, Hunt, Hart,

9    Brown & Baerwitz, supra 57 Cal App. 3d 104, 109.) Cicone v. URS Corp, 183 Cal. App.3d

10    194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

11        Defendant Attorney Meckley knew he was construing to help carryout a scheme help

12    shield his client from Plaintiff's claim of wrongful termination and disability discrimination.

13    Defendant Attorney Meckley owed plaintiff a duty of care as an Attorney to uphold law and not

14    engage in a fraudulent activity he knew would deprive plaintiff of his rights. Plaintiff has

15    presented credible evident supporting his claims against defendant Attorney Meckley but can

16    also rely on res ipsa loquitur, as the acts of Defendant Attorney Meckley speaks for itself and

17    Plaintiff needs no other information to determine negligence.

18        If the Attorney's misconduct involved an illegal transaction, the court may consider as a

19    mitigating factor the fact that the Attorney was merely a "follower", rather than an instigator in

20    the transaction. The Court may also consider the fact that the transaction occurred in connection

21    with the Attorney's personal affairs, and that the Attorney did not stand to benefit personally

22    from the transaction [see in re Chira (1986) 42 cal 3d 904, 909, 231 Cal Rptr. 560, 727 P. 2d

23    753].

24

25    PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
      OPPOSING DEFENDANT'S OPPOSTION

                                                                            3

                                                                C- 08-01337 MHP

1    Plaintiff alleges that Defendant Attorney Meckley was an instigator not merely a

2   "follower" in that he knew or had knowledge of the falsity of the document (VRA) and knew

3   presenting it in the manner in which he did was deceitful, therefore there are no mitigating

4   circumstances defendant Attorney Meckley can claim. Also Defendant Attorney Meckley's

5   motive was to fraudently shield his employer from a wrongful termination claim, and impress his

6   client and employer.

7    "An Attorneys presentation to court of statement of fact which is known to be false and

8   which tends to mislead court violates this section, whether or not attorney is successful in

9   misleading court, and intent to secure determination based on false statement is presumed.

10   Vickers V. State Bar of Cal. (1948) 196 P.2d 10, 32 Cal 2d 247; Pickering V. State Bar of

11   California (1944) 148 P.2d 1.24 Cal 2d 141.

12    Plaintiff alleges that defendant Meckley acts were intentional Fraud & Deceit, as he knew he

13   was participating in a fraudulent Scheme, and as he had knowledge of the falsity and the fraud.

14   Plaintiff alleges Attorney Meckley was negligent in his duties as an attorney.

15    Furthermore, Attorney Meckley and MLB should withdraw as council in this present case

16   and case number C-08-1336, due to Plaintiff's alleged charges of Breach of Fiduciary Duty and

17   Fraud against attorney Meckley and because he and MLB should refuse employment when the

18   interests or the lawyer may impair his independent professional judgment, and because he may

19   be called as a witness.

20    When charges are pending against a member, the member may opt to resign and

21   relinquish the right to practice law and thus avoid the prospect of formal discipline [see Call

22   Rules of Ct. Rule 9.21Ca]

23   The phase "charges pending" means the member [Cal State Bar Rules Pro Rule 650]:

24

25

1     • Is the subject of an investigation or a disciplinary proceeding;

2     • Is the subject of a criminal investigation or charge; or

3     • Has been convicted of a felony or misdemeanor

4    Plaintiff claims pending against Defendant Attorney Meckley establish that

5     (1) He is subject of an investigation or a disciplinary proceeding and

6     (2) He is subject of a criminal investigation or charge; and therefore should voluntarily

7        withdrawn from this case

8     Pursuant to the ABA Disciplinary Rule (DR 5 – 101 Refusing Employment When the

9    Interests or the Lawyer may impair his independent professional judgment

10        (A) Except with the consent of his client after full disclosure a lawyer shall not accept

11            employment if the exercise of his professional judgment or behalf of his client

12            will be or reasonably may be affected by his own financial, business, property, or

13            personal interests.

14        (B) A lawyer shall not accept employment in contemplated or pending litigation if he

15            knows or it is obvious that he or a lawyer in his firm ought to be called as a

16            witness, except that he may undertake the employment and he or a lawyer in his

17            firm may testify;

18     (1) If the testimony will relate solely to an uncontested matter

19     (2) If the testimony will relate solely to a matter of formality and there is no reason to believe

20        that substantial evidence will be offered in opposition to the testimony.

21     (3) If the testimony will relate solely to the nature and value of legal services rendered in the

22        case by the lawyer or his firm to the client

23    CF. ABA Canons of Professional Ethics, Canon 6 (1908) and ABA opinion 181(1938) 104

24

25    PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
      OPPOSING DEFENDANT'S OPPOSTION
                                                            C- 08-01337 MHP

5

1  (1934), 103, 72 (1932)

2  Pursuant to DR 5 – 102 withdrawal as counsel when the Lawyer becomes a witness

3      (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns

4        or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of

5        his client, he shall withdraw from the conduct of the trial and his firm, if any shall

6        continue the representation in the trial, except that he may continue the representation

7        and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5 –

8        101(b) (1) through (4)

9      (3) A conflict of interest has arisen between Plaintiff and Morgan Lewis & Bokius. Again it

10        is unethical for any Attorney employed by Morgan Lewis &Bokius to act as council in

11        this case and the case against Aramark for same reasons mentioned herein.

12  **B. Furthermore, It Is Not Undisputed That Neither MLB Nor Meckley Has**

13  **Perpetrated A Fraud Against Plaintiff**

14  Defendants state in section D. on page 5 of their opposition in case number C-08-1336, "The

15  alleged "fraud" consists solely of Defendants' council serving a mediation brief on Plaintiff and

16  a mediator attorney Bruce Highman in connection with the Bar Asc. Of San Francisco which

17  parties were ordered to attend by the San Francisco Superior Court"

18  Plaintiff disagrees with this accusation, because first, the alleged fraud does not solely consist

19  on Attorney Meckley serving the mediation brief on Plaintiff and the mediator, it was also served

20  or presented to the State Bar and San Francisco Superior court, which is a tribunal. The Early

21  Settlement Program is not merely sponsored by the State Bar and San Francisco Superior Court,

22  it is also a court ordered program, governed by laws of the court, which makes it a tribunal.

23  Therefore Attorney Meckley and his client Aramark presented a false document to the court.

24
25

1   Second, Plaintiff has alleged other facts to support his claims of fraud, such as, the

2   knowledge of falsity, intent, circumstantial evidence and probability, among other things. The

3   court only needs to look at Plaintiff's pleadings, those filed in this court as well as the ones filed

4   in San Francisco Superior court.

5   Defendants continue by stating or implying what was in their mediation brief, regarding how

6   Plaintiff voluntary quit on his own because he signed and agreed to the VRA agreement entered

7   into on March 28, 2006, and how Miller called him to remind him that he was scheduled to

8   return to work on June 15, 2006 and that plaintiff admitted to never returning Miller's phone call,

9   and because Plaintiff failed to return to work on June 15, 2006 he effectively resigned his

10  position, and his employment with Aramark ended that same date, and that Plaintiff later

11  confirmed his resignation in a signed writing and a true copy of it was attached as Exhibit 6.

12  Here Defendants want to present the notion that Plaintiff voluntarily resigned on his own, to

13  imply that his resignation was not an involuntary resignation but a voluntary resignation, which

14  is a false fact, in that it is fabricated and not founded in truth, and exists only in assertion and is a

15  deceitful semblance of a fact.

16  Plaintiff alleges Aramark knew, and more importantly Attorney Meckley knew that because

17  Plaintiff was terminated pursuant to the March 28, 06 agreement he was forced to quit due to his

18  disability, and that it was not a voluntary resignation, but an involuntary resignation, and

19  Plaintiff did not resign on his own or because he wanted to, but because he was forced to.

20  Defendants continue to state that the new VRA signed on or around May 7, 2007, and the

21  original VRA signed on March 28, 2006 both prove that Plaintiff was not constructively

22  discharged. Plaintiff alleges that this is another false fact, in that Defendants, as well as Attorney

23  Meckley knows that neither agreement proves that Aramark did not constructively discharge

24

25

1  Plaintiff, because they knew that plaintiff was constructively discharged on March 28, 2006
2  when he requested and was forced to take medical leave because of the harassment and
3  retaliation from Aramark, which constitutes being subjected to intolerable conditions at that time
4  on March 28, 2006, not June 15, 2006. Plaintiff was disabled on June 15, 2006, and was under
5  the care of his doctor, and the truth is at that time he was not being subjected to intolerable
6  conditions on June 15, 2006 because he was not working there. Plaintiff alleges that he *was*
7  subjected to disability discrimination and a wrongful termination on June 15, 2006, because
8  Aramark and Attorney Meckley knew Plaintiff was disabled, and knew that he was not offered a
9  reasonable accommodation, and knew they had not followed union connected procedures prior to
10 terminating him, They also knew that the March 28, 06 VRA did not preempt Aramark from
11 offering Plaintiff a reasonable accommodation to his disability, nor did it preempt Aramark from
12 following union rules before deciding to terminate Plaintiff pursuant to the March 28, 06 VRA.
13 "To establish constructive discharge, a plaintiff needs to show that a reasonable would have
14 found the conditions of her employ intolerable and that the employer either intended to force her
15 to resign or could have reasonably foreseen she would do as a result of its actions". Odgen v.
16 Waxworks

17 "To have a valid claim of constructive discharge, an employee need not have completely
18 resigned from the job. It is sufficient if the employee establishes that, because of intolerable
19 conditions; he or she needed to remove himself or herself from the job (for example, by electing
20 to go on disability retirement) and thus was effectively constructively discharged." Colores v.
21 Board of Trustees of Cal. State University (2003) 105 Cal App. 4th 1293, 1316-1318, 130 Cal
22 Rptr. 2d 347

23 There is no argument based on the interpretation of the Voluntary Resignation Agreement(s),
24
25 PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
   OPPOSING DEFENDANT'S OPPOSTION
   C- 08-01337 MHP

1   and there is no mistaken belief on Plaintiff's part that the Defendants presentation and

2   interpretation of the evidence is different, in that, it is the same, the only difference is that

3   Plaintiff is telling the whole truth and the Defendants are not. Both parties agree Plaintiff

4   resigned pursuant to the VRA Plaintiff signed on March 28, 06, but what the Defendants are not

5   revealing or admitting is that terminating Plaintiff pursuant to the March 28, 06 VRA was wrong,

6   and that is the sole purpose of the new VRA, to cover this fact up.

7       a) A Further Explanation of Attorney Meckley's Knowledge Of Falsity

8       1.      Plaintiff alleges that if Aramark and Attorney Meckley is stating or implying that the

9               presentation of the new VRA in the mediation was just to confirm his client didn't

10              constructively discharged plaintiff on June 15, 2006, this is invalid because Plaintiff

11              constructive discharge occurred on March 28, 06, not June 15, 06. Plaintiff also

12              alleges that:

13      2.      If Aramark and Attorney Meckley is stating or implying that the new VRA was just

14              to confirm Plaintiff resigned pursuant to the March 28, 06 VRA, this is invalid,

15              because the new VRA was not needed to confirm this fact as the March 28, 06

16              agreement already confirmed this fact

17      3.      If Aramark and Attorney Meckley is stating or implying that the new VRA was to

18              confirm that Plaintiff was not constructively discharged on March 28, 06, this is

19              invalid because Plaintiff was constructively discharged on March 28, 06.

20      Therefore, Plaintiff alleges that neither the new VRA signed on or around May 7, 07, or the

21  March 28, 06 VRA proves Aramark did not constructively discharge Plaintiff.

22      Plaintiff alleges that if Attorney Meckley claims he had no knowledge as to how the new

23  VRA was obtained, he still had knowledge that Plaintiff was terminated pursuant to the March

24

25  PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
    OPPOSING DEFENDANT'S OPPOSTION

                                                                    9

1  28, 06 VRA (which he admits) and that his client terminated Plaintiff because he failed to return

2  to work on June 15, 2006, (which he admits). Therefore Attorney Meckley knew his client has

3  subjected Plaintiff to a wrongful termination and disability discrimination, and he knew the new

4  VRA's purpose was to void-out the March 28, 06 agreement and/or to cover-up the fact that the

5  terminating Plaintiff pursuant to the March 28, 06 VRA proved that Aramark's termination of

6  Plaintiff was wrong, because it subjected Plaintiff to a wrongful termination and disability

7  discrimination.

8  Plaintiff alleges that the new VRA was not to confirm that his client did not constructively

9  discharge Plaintiff, nor was it to confirm that Plaintiff resigned to the March 28, 06 VRA, it was

10  obtained to create the false fact that Plaintiff termination was a "voluntary quit" as opposed to it

11  being an "involuntary quit", as his termination was an involuntary quit, because he was forced to

12  resign because of his disability.

13  "A disabled claimant may bring suit under the California Fair Employment and Housing

14  Act (FEHA) Gov. Code 12900 et seq. for employment discrimination Government Code 12940

15  subd.(a) can establish a prima facie case by proving that (1) he or she suffers from a disability;

16  (2) he or she is a qualified individual; and (3) he or she was subjected to an adverse employment

17  action because of the disability." Jensen v. Wells Fargo Bank 85 Cal App 4th 243, 102 Cal Rptr

18  2d 55 [Dec 2000]

19  "To prevail on a claim of unlawful discharge under the ADA the plaintiff must establish

20  that he is a qualified individual with a disability and that the employer terminated him because of

21  his disability." Copper v. Neiman Marcus Group, 125 F. 3d 786, 790 (1997) Humphrey v.

22  Memorial Hospital ASSn. 239 F. 3d 1128 9th Cir 2001

23  Aramark and Attorney Meckley knew Plaintiff had been subjected to disability

24

25  PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
   OPPOSING DEFENDANT'S OPPOSTION

10

C- 08-01337 MHP

discrimination, because they knew that 1) the only action  Aramark initiated to secure Plaintiff's employment was Tim Miller calling Plaintiff to inform him that he was scheduled to return to work on June 15, 2006. which was not offering Plaintiff a reasonable accommodation; 2) they also knew Plaintiff was disabled on or around June 15, 2006, and 3) they knew Plaintiff's position was union connected, and Aramark terminated Plaintiff without adhering to union rules regarding terminating union employees, pursuant to the collective bargaining agreement Aramark had with the union, therefore they knew Plaintiff had been subject to a wrongful termination.

"American with Disabilities Act (ADA) does not require an employee to show that a leave of absence is certain or even likely to be successful to prove that it is a reasonable accommodation under the ADA." ADA of 1990 101(8) 42 U.S.C.A. 1211(8), Humphrey v. Memorial Hosp. Assn

"Once an employer becomes aware of the need for an accommodation of employees disability, the employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." 42 U.S.C.A. 12101 et seq.

Defendants, specifically James Chan and Vicki Litner, failed to engage in the interactive with plaintiff to identify any further possible reasonable accommodations for plaintiff's disability prior to terminating his employment.

"Employers who fail to engage in the interactive process with disabled employee to identify and implement appropriate reasonable accommodations in good faith face liability for the remedies imposed by the ADA if a reasonable accommodation would have been possible." 42 U.S.C.A 12101 et seq.

Defendants had an affirmative duty under the ADA and California Fair Employment and

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
OPPOSING DEFENDANT'S OPPOSTION

11

1  Housing Act to explore further arrangements to offer a reasonable accommodation for plaintiff

2  before terminating him, although defendants had allowed plaintiff a disability leave, the

3  accommodation was ineffective and a further accommodation would have been appropriate. See

4  Humphrey v. Memorial 1731 (6).

5      "Thus, the employer's obligation to engage in the interactive process extends beyond the

6  first attempt at accommodation and continues when the employee asks for a different

7  accommodation or when the employer is aware that the initial accommodation is failing and

8  further accommodation is needed. This rule fosters the framework of cooperative problem-

9  solving contemplated by the ADA, by encouraging employers to seek to find accommodations

10  that really work, and by avoiding the creation of a perverse incentive for employees to request

11  the most drastic and burdensome accommodation possible out of fear that a lesser

12  accommodation might be ineffective." Humphrey v. Memorial Hosp. Assn.

13      Defendants Aramark Sports, L.L.C. and Aramark Corporation, failed to engage in the

14  interactive process and it was their responsibility to offer plaintiff a further reasonable

15  accommodation prior to terminating him. It was not plaintiff's responsibility to request one

16  before he was fired, it was the defendants' responsibility to offer plaintiff a further

17  accommodation due to defendants being under a continuing duty to offer a reasonable

18  accommodation to a disabled employee. See Huprhey v. Memor.

19      Neither James Chan or Victoria Litner or anyone from Human Resources ever broached the

20  subject of modifying plaintiff's accommodation before terminating him. For example, plaintiff

21  was never offered an extension of his leave or offered to place plaintiff in a vacate position in the

22  reasonable future. SEE Humphrey v. Metro, 42 12111 (9) (A)(B)

23      Furthermore, if Aramark and Attorney Meckley are stating or implying that the new VRA

24

25  PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
    OPPOSING DEFENDANT'S OPPOSTION                                          12

1   was to confirm that Plaintiff was terminated pursuant to the March 28, 06 VRA , and that the

2   March 28, 06 VRA justifies or gave Aramark the right to terminate Plaintiff because he signed

3   and agreed to it thus terminating himself, this is invalid, because Aramark and Attorney Meckley

4   knew that just because signed the March 28, 06 VRA, it did not give Aramark the right to

5   terminate Plaintiff under the circumstances, specifically because Plaintiff was disabled on or

6   around June 15, 06, and was not offered a reasonable accommodation, due to the fact that no one

7   at Aramark engaged into an interactive process with Plaintiff to offer him a reasonable

8   accommodation. Aramark and Attorney Meckley also knew Plaintiff was wrongfully terminated.

9       Plaintiff alleges that Aramark and Attorney Meckley knew terminating Plaintiff pursuant to

10  the March 28, 06 VRA was wrong, plain and simple. So for Attorney Meckley and Aramark to

11  present the new VRA to show or imply that Plaintiff's termination was voluntary - because he

12  elected to terminate himself because he signed the March 28, 06 VRA, is a misrepresentation of

13  material fact and a false fact, made with the intent to defraud.

14      Plaintiff alleges that Aramark and Attorney Meckley knew these facts because they had the

15  evidence to know, and that's why they proactively tried to cover it up, and they are still trying to

16  cover it up.

17      Furthermore, Plaintiff alleges that Attorney Meckley excuse for presenting the new VRA in

18  the mediation is not a plausible excuse or answer, as it may appear to be. His purpose is to shield

19  the fact that he himself engaged in a fraudulent misrepresentation with his client Aramark. His

20  answer is invalid, as he knows a constructive discharge by law occurs when an employee is

21  subject to intolerable conditions and is forced to resign by either quitting or taken a medical

22  leave. Aramark and Attorney Meckley is stretching the meaning of a constructive discharge to fit

23  in their reality and definition so they can claim they had no intention of defrauding Plaintiff of

24

25  PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
    OPPOSING DEFENDANT'S OPPOSTION

                                                                    13

                                                        C- 08-01337 MHP

1    his disability discrimination and wrongful termination claims  Aramark and Attorney Meckley is

2    trying to instruct or lead this court to believe as to what a constructive discharge is and that their

3    reasoning  for them presenting the new VRA is sound based on their constructive discharge

4    notion. It is clear that Attorney Meckley and Aramark have never, till present, addressed the

5    issue of wrongful termination and disability discrimination, which they accuse Plaintiff of

6    rambling on about. Why not address it and be done with it? Plaintiff believes that if Attorney

7    Meckley and Aramark can persuade this court to see things their way with false facts and

8    twisting the law, then he and Aramark can shield himself and get "off the hook". There are many

9    claims against the Defendants, and the validity of Plaintiff's claims rests primarily on the two

10   agreements, and their purpose.

11         It is clear and undisputed that 1) the new VRA was not needed by Aramark or Attorney

12   Meckley, as the March 28, 06 VRA would have sufficed, and 2) the new VRA was in question

13   from the outset, not only by Plaintiff, but his worker's compensation attorney, Mary Lou

14   Williams, and 3) the language used to obtain it constituted coercion by Aramark and the Law

15   Offices of Gray and Prouty, and 4) there was no need for the Law Offices of Gray and Prouty to

16   present the new VRA to Plaintiff after Plaintiff had already not been employed by Aramark for

17   over a year, and also because Gray and Prouty was not connected to the wrongful termination

18   and disability discrimination situation and had already agreed to settle the worker's

19   compensation case with Plaintiff, and 5) the document showed up somewhere, ( in the

20   mediation) as Plaintiff expected that it would after he discovered the disability discrimination

21   and wrongful termination and the cover-up.

22         Attached to the Declaration of Mark Antoine Foster as Exhibit "A" is a true and correct copy

23   of the correspondence between Foster and his worker's compensation attorney Mary Lou

24

25   PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
     OPPOSING DEFENDANT'S OPPOSTION

                                                                                          14

                                                                            C- 08-01337 MHP

1 | Williams, evidencing the states of mind as to the suspiciousness of the new VRA

2 | Attached to the Declaration of Mark Antoine Foster as Exhibit "B" is a true and correct copy

3 | of the Plaintiff's lawsuit against Gray and Prouty. Plaintiff amended the lawsuit to dismiss the

4 | federal claims and redefine his fraud claims.

5 | **C.    Plaintiff May Lack Standing To Move To Disqualify MLB And Its Attorneys**

6 | **Based On Any Alleged Conflict Of Interest, But Only In The Traditional Sense, Not In The**

7 | **Present Case, Due To Attorney Meckley's Breach Of Fiduciary Duty and Fraud And**

8 | **Intentional Deceit**

9 | Defendants state in section B. on page 3 of their opposition that "Generally, only clients

10 | and former clients of the attorneys at issue have standing to bring a disqualification motion based

11 | on a conflict of interest".

12 | Plaintiff alleges that Defendants are correct, although the key word is "generally", and

13 | the problem here is that Attorney Meckley denies that he has committed fraud and a breach of

14 | fiduciary duty against plaintiff, and the fact that he even owes Plaintiff a duty, and based on this

15 | denial, he depends on law as a defense that he is not entitled to. In Plaintiff's complaint against

16 | MLB and Eric Meckley as an individual, Plaintiff alleges fraud and intentional deceit and breach

17 | of fiduciary duty, which as a result has created a conflict of interest between him and MLB.

18 | Plaintiff alleges that Attorney Meckley has created a conflict of interest because he has

19 | breached his fiduciary duty as an attorney when he presented a known fraudulent document to

20 | the court and to plaintiff, as he preserved and presented the document in behalf of his client,

21 | knowing it was to deprive Plaintiff of a wrongful termination and disability discrimination claim.

22 | "It was a grave breach of Professional Ethics on part of claimant's Attorney's to present

23 | expert testimony knowing or suspecting it to be false and misleading in the absence of full

24 |

25 | PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS OPPOSING DEFENDANT'S OPPOSTION

15

C- 08-01337 MHP

1    disclosure of the manner in which test of allegedly defectively designed winch was conducted "

2    Xanudu Maritime Trust V. Meyer N.D. CAL 1998, 21 F. Supp 2d. 1104.

3        Plaintiff alleges that Defendant Meckley motive was to please his client and impress his

4    employer, as he overreached to accomplish this.

5        Plaintiff alleges and acknowledges that he can't move to disqualify in the traditional

6    sense, as to what a conflict of interest is, as mentioned herein. Plaintiff is simply saying that

7    because he reasonably believes that Attorney Meckley and his client has committed a wrong

8    against him, and in light of the circumstances neither Attorney Meckley or any of MLB attorneys

9    should be representing council for themselves, nor Aramark against Plaintiff. Plaintiff feels

10    totally uncomfortable pleading his claims of fraud and breach of fiduciary duty against the

11    attorneys whom is has alleged these claims against. It would be unethical to allow them to act as

12    council against Plaintiff. Plaintiff alleges that Attorney Meckley has already breach his fiduciary

13    duty as an attorney against him and does not trust Attorney Meckley nor any of the attorneys

14    employed at MLB.

15    **D.**       **Plaintiff Does Not Lack Standing To Move To Disqualify MLB And Its**

16    **Attorneys Based On The Possibility That Meckley May Be Called As A Witness In Any Of**

17    **Plaintiff's Lawsuits, Because It Is Possible He May Be Called As A Witness In His Lawsuits**

18        Again, Defendants deny that they have committed fraud and intentional deceit and a breach

19    of fiduciary duty against Plaintiff, and their defense is based on that denial. There can be and is a

20    conflict of interest between the third party and the opposing attorney in this present case.

21        " In California it is well established that an attorney may not, with impunity, either conspire

22    with a client to defraud or injure a third person or engage in intentional tortious conduct toward a

23    third person" Cicone v. URS Corp, 183 Cal. App. 3d 194; 227 Cal Rptr. 887;1986 Cal. App.

24

25    PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
      OPPOSING DEFENDANT'S OPPOSTION

                             16

1   LEXUS 1804 (1986)

2       "Thus the case law is clear that a duty is owned by an attorney not defraud another, even if

3   that other is an attorney negotiating at arm's length." Cicone v. URS Corp, 183 Cal. App. 3d

4   194; 227 Cal Rptr. 887;1986 Cal  App. LEXUS 1804 (1986)

5   **E.  Disqualification Would Not Be Inappropriate In The Present Case**

6       Plaintiff reiterates, he is not using his motion to disqualify as a strategic purpose, maybe

7   this is something Attorney Meckley would do, not Plaintiff, and he does not have to. Attorney

8   Reichert claims that a disqualification would pose an undue hardship on her innocent client who

9   must bear the costs of finding another attorney. Plaintiff alleges that her client is far from

10  innocent and far from being subjected to a financial hardship, as they are a 6 billion dollar

11  corporation..

12      CONCLUSION

13      Plaintiff prays that this court disqualify the attorneys mentioned in this motion in the face

14  of the evidence and the fact that the attorneys have had a whole year to produce a credible

15  defense, but has only mounted an ineffective campaign, with a lack of creditable statements and

16  paper trials that lead no where, and have only resorted to tactics to mislead the court and

17  Plaintiff. Defendants have also attempted to discredit Plaintiff in so many ways, as Plaintiff

18  expects more of the same twists, turns and tricky maneuvers.

19      Plaintiff alleges that it must be difficult for Defendants to have Plaintiff mount these

20  strong overwhelming claims, as he is in Pro Per, a African American and a "cook coming out of

21  the kitchen" to defend his name and honor against these attacks on his freedom, his right to work

22  without harassment and retaliation, and their attacks on his character. Plaintiff prays that the

23  court saves the public, the court system and him the untruths and lies continually being presented

24

25  PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS          17
    OPPOSING DEFENDANT'S OPPOSTION
                                                                    C- 08-01337 MHP

1 | to this court.

2 |      Plaintiff's motion to disqualify should be granted, and Plaintiff should not be subjected to

3 | a sua sponte issue to show cause why he should not be sanctioned under rule 11 for filing his this

4 | motion.

5 | Dated: April 15, 2008                Mark Antoine Foster, In Pro Per

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**18**

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
OPPOSING DEFENDANT'S OPPOSTION

C- 08-01337 MHP